STEVEN W. MYHRE
Acting United States Attorney
District of Nevada
SUSAN CUSHMAN
Assistant United States Attorney
501 Las Vegas Blvd. South, Ste. 1100
Las Vegas, Nevada 89101
Telephone: (702) 388-6336
Fax (702) 388-6698
susan.cushman@usdoj.gov

Attorney for the United States of America

FILED
2017 AUG 23 PM 1:26
U.S. MAGISTRATE JUDGE
BY_____

# UNITED STATES DISTRICT COURT
# DISTRICT OF NEVADA
### -oOo-

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>    Plaintiff,<br><br>vs.<br><br>VICTOR NAVARRO, and<br>JOSE SALVADOR GONZALEZ MILLAN,<br><br>    Defendants. | Magistrate No.   2:17-mj-0865-PAL<br><br>**CRIMINAL COMPLAINT**<br><br>Violation:<br>21 U.S.C. §§ 846, 841(a)(1)(a), (b)(1)(B)(i) – Conspiracy to Distribute a Controlled Substance – Heroin |

BEFORE a United States Magistrate Judge of the United States District Court for the District of Nevada, the undersigned Complainant, being duly sworn, deposes and states:

### COUNT 1: – CONSPIRACY TO DISTRIBUTE CONTROLLED SUBSTANCES

Beginning from a time unknown, and continuing up to and including August 22, 2017, in the State and Federal District of Nevada and within the jurisdiction of this

Court, **VICTOR NAVARRO** and **JOSE SALVADOR GONZALEZ MILLAN**, the defendants herein, did knowingly participate in a conspiracy to distribute controlled substance - Heroin, in violation of 21 U.S.C. §§ 846, 841(a)(1), (b)(1)(A)(viii) and (b)(1)(B)(i).

## **PROBABLE CAUSE AFFIDAVIT**

Complainant, Ryan S. Burke, as a Special Agent with the Federal Bureau of Investigation (FBI), states the following as and for probable cause:

1. Complainant is a Special Agent with the Federal Bureau of Investigation (FBI), and has been so employed since October 2012. Currently, Complainant is assigned to the Las Vegas Field Office's Safe Streets Gang Task Force (hereafter, "SSGTF") and is responsible for investigating violent crimes including but not limited to cases involving drug trafficking, kidnapping, extortion, robbery, felons in possession of firearms, as well as investigations into the activities and operations of criminal enterprises. Your Complainant has experience in conducting criminal investigations, including the investigation of criminal groups and conspiracies, as well as the collection of evidence and the identification and use of witnesses.

2. The information used to support this Complaint was derived from first hand observations made by law enforcement personnel, consensually recorded telephone conversations, consensually recorded in-person meetings, statements made by defendants, and a seizure of heroin. This Complaint contains information necessary to support probable cause to believe that the criminal offense described herein was committed by the defendants and is not intended to include each and every fact and matter observed by your Complainant or known to the Government. Moreover, to the

extent that this Complaint contains statements by witnesses and defendants, those statements are set forth only in part and in substance and are intended to accurately convey the information, but not to be verbatim recitations.

## FACTS ESTABLISHING PROBABLE CAUSE

3. On August 21, 2017, an FBI Confidential Source ("CS-1") was contacted by an individual utilizing the moniker of "Loco," later identified as NAVARRO, regarding a planned delivery of heroin from Phoenix to the CS-1 in Las Vegas, Nevada. The call, which was consensually recorded by CS-1 at the direction of the FBI, detailed NAVARRO's plan to transport one kilogram of heroin to CS-1 on the following day. NAVARRO and CS-1 agreed to arrange a meeting location to conduct the heroin transaction as soon as NAVARRO arrived in Las Vegas on August 22, 2017.

4. On August 22, 2017 at the direction of the FBI, CS-1 and another FBI Confidential Source ("CS-2") informed NAVARRO they were ready to conduct the heroin transaction and provided him with a meeting location. NAVARRO arrived at the meeting location as the driver of a black Kia sedan with a front passenger later identified as MILLAN. NAVARRO informed CS-2 he needed to see the money before he called an unknown associate to bring the heroin to the meeting location. Consequently, the Confidential Sources departed the initial meeting location and went to another location where they utilized a video-calling phone application to show NAVARRO the currency. Soon after, NAVARRO departed the initial meeting location and went to another location where he utilized the same video-calling phone application to show the Confidential Sources what they believed to be heroin. NAVARRO and CS-2 then agreed to meet back at the initial meeting location to conduct the transaction.

5. Upon NAVARRO's and MILLAN's return to the meeting location, FBI Agents and Task Force Officers stopped the Kia sedan and ordered both of them out of the vehicle. NAVARRO exited from the driver's seat and MILLAN exited from the front passenger seat. Visible in the driver's door pocket was a white bundle that appeared consistent with packaging utilized for narcotics. Further inspection of the bundle revealed that it contained a brown substance, which was believed to be the previously discussed heroin. Consequently, NAVARRO and MILLAN were arrested and transported to the FBI office for interviewing. The suspected heroin weighed approximately 502.4 grams[1].

6. Investigators advised MILLAN of his rights according to the FBI's Advice of Rights form, to which he acknowledged understanding, and attempted to interview him. MILLAN denied being involved in a narcotics transaction. He explained that he and NAVARRO traveled to Las Vegas from Phoenix to sightsee for a couple hours and then planned on returning to Phoenix on the same day.

7. Next, investigators advised NAVARRO of his rights according to the FBI's Advice of Rights form, which he signed to memorialize his understanding of those rights and his willingness to answer questions without an attorney present. NAVARRO explained that he and MILLAN departed from Phoenix, Arizona early in the morning for the purpose of traveling to Las Vegas, Nevada to make a one kilogram heroin delivery to CS-1. Both individuals were aware of the purpose for their trip to Las Vegas because both individuals visually observed the heroin that was provided to

---

[1] The suspected heroin could not be field-tested because such kits do not exist and this type of heroin requires laboratory testing.

them by a common associate. NAVARRO explained that only one-half of the kilogram of heroin was seized by law enforcement because the other half was in a second vehicle that law enforcement did not identify. NAVARRO corroborated all of the aforementioned details of his interactions with the Confidential Sources.

8.   Based on the foregoing, there is probable cause to believe that NAVARRO and MILLAN conspired to distribute heroin, in violation of Title 21, Sections 846, 841(a)(1)(a), (b)(1)(B)(i).

_____
Ryan S. Burke, Special Agent
Federal Bureau of Investigation

SUBSCRIBED and SWORN to before me this ___ day of August, 2017.

_____
UNITED STATES MAGISTRATE JUDGE